O

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **Joshua Druker,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 5:06-cv-00052 |
| | § | |
| **Fortis Health, a/k/a Assurant Health;** | § | |
| **Fortis, Inc.; Assurant Inc.; Carlos** | § | |
| **Sanchez; and Michael Rivera,** | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**OPINION AND ORDER**

Pending before the Court is Defendants Carlos Sanchez and Michael Riveras' Motion to Dismiss all of Plaintiff's claims against them, [Dkt. No. 16], and Plaintiff's Motion for Rehearing [Reconsideration] of Plaintiff's Motion to Remand, [Dkt. No. 20]. Upon due consideration of the parties' Motions, the responsive filings, and the governing law, the Court DENIES Plaintiff's Motion for Reconsideration and GRANTS Defendants' Motion to Dismiss.

**I.    PROCEDURAL HISTORY AND RELEVANT FACTS**

In June 2003 Plaintiff Joshua Druker purchased a health insurance policy ("the Policy") from Defendant Fortis Health. [Dkt. No. 1, ¶11]. This suit arises out of the latter's failure to pay claims filed by Plaintiff under that Policy. On January 13, 2006, Plaintiff, a Texas resident, filed suit in the 111th Judicial District Court, Webb County, Texas, against Defendants Fortis Health; Fortis, Inc.; and Assurant Inc., claiming fraud, breach of contract, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act and the Texas

Insurance Code. [Dkt. No. 1]. Plaintiff brought the same claims against Carlos Sanchez and Michael Rivera, two Texas residents and insurance agents employed by Defendant Fortis when the events giving rise to this cause of action took place. [Dkt. No. 1, ¶¶ 7, 14]. On March 20, 2006, Defendant Fortis filed its Notice of Removal to federal court pursuant to 28 U.S.C. §§ 1441 and 1446, arguing that Defendants Sanchez and Rivera were fraudulently joined in state court. [Dkt. No. 1-1]. In its Notice of Removal, Fortis, the insurance company Defendant, refers to itself as "Time Insurance Company." [Dkt. No. 8-1 at 1]. Therefore, the Court hereafter will refer to that entity as "Time" rather than "Fortis."

On April 26, 2006, Plaintiff filed his Motion for Remand, [Dkt. Nos. 7-1], which the Court denied on July 17th based on its conclusion that Defendants Sanchez and Rivera were fraudulently joined as defendants in state court for the purpose of precluding diversity jurisdiction in this Court. [Dkt. No. 14]. Fraudulent joinder analysis is extremely similar to the dismissal rubric under Federal Rule of Civil Procedure 12(b)(6). Thus, in light of the Court's fraudulent joinder finding, Defendants Sanchez and Rivera filed the Motion to Dismiss now before the Court. [Dkt. No. 16]. Plaintiff filed his Response on August 18, 2006, [Dkt. No. 18], arguing essentially that, to the extent dismissal would logically follow from the Court's previous finding of fraudulent joinder, such finding was in error and therefore the Court should deny dismissal. Accordingly, Plaintiff also asks the Court to reconsider its July 17th denial of remand.

## II.   PROCEDURAL POSTURE AND THE RELEVANT STANDARD OF REVIEW

Although Plaintiff fails to expressly invoke the provision governing motions for reconsideration, such are generally considered cognizable under either Federal Rule of Civil Procedure 59(e), as motions "to alter or amend judgment," or under Rule 60(b), as motions for

"relief from judgment." *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 173 (5th Cir. 1990). Further, "[u]nder which Rule the motion falls turns on the time at which the motion is served . . . If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.* Because Plaintiff filed his Motion for Reconsideration within ten days of the Court's denial of remand, the Court deems Plaintiff's Motion as brought under Rule 59, which allows a court to afford a party relief from an adverse ruling or judgment for "any . . . reason justifying relief from the operation of the judgment."

Presumably because a motion filed under Rule 59 is filed earlier than one urged under Rule 60, the substantive threshold applicable to motions of the former type is generally considered more lenient. *Id.* at 173. Rule 59 thus has been read to vest wider discretion in courts to alter or amend the respective judgment. *Id.* Nevertheless, a motion pursuant to that Rule "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004); *see also Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Thus, the role of Rule 59 is limited to the correction of "manifest errors of law or fact or to present newly discovered evidence." *Id.* Lastly, although both rules generally speak of "judgments," they have been read to apply equally to non-dispositive rulings. *See Krim v. Pcorder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) (citing *Texas Instruments, Inc. v. Hyundai Elecs. Indus. Co.*, 50 F. Supp. 2d 619, 621 (E.D. Tex. 1997); *In re Ford Motor Co.*, 1997 U.S. Dist. Lexis 5732, 1997 WL 191488, at *2 (E.D. La. 1997)). Therefore, the Court will vacate its previous order denying remand only upon a finding of "manifest error."

**III. DISCUSSION**

The Court's previous finding of fraudulent joinder was based on its conclusion that Plaintiff's state court Petition at the time of removal provided "no reasonable basis . . . to predict that he might be able to recover against" Sanchez or Rivera. [Dkt. No. 14]. That conclusion, in turn, was compelled by the governing "12(b)(6) type analysis," which looks to "the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant[s]." [Dkt. No. 14 at 2 (quoting *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2004)]. Plaintiff's failure to adequately state a claim, the Court concluded, gave rise to the inference that Plaintiff, in state court, joined the in-state Defendants for the sole purpose of destroying diversity, thus precluding Defendants from removing to federal court. Plaintiff now argues that the Court's finding of fraudulent joinder was incorrect because the factual allegations in his Complaint, taken together, state a cause of action against Defendants Sanchez and Rivera. [Dkt. No. 20 at 3-4].

**A. State Versus Federal Pleading Practice**

Plaintiff first argues that the Court should have applied the Texas pleading standard in determining whether his Complaint stated a claim against Defendants Sanchez and Rivera. [Dkt. No. 20, ¶ 13]. The Court's fraudulent joinder finding was allegedly "premature" because it was reached before Plaintiff had an opportunity to amend his Complaint, as would have been his right in state court. [Dkt. No. 20, ¶ 13]. Plaintiff further suggests that his current Complaint, even without further amendment, would have satisfied the state pleading standard, which he suggests is, relative to the Federal Rules, tolerant of very general factual allegations. [Dkt. No. 20, ¶ 13].

According to Plaintiff, in Texas courts, dismissals "without special exceptions and summary judgment proceedings, [and] after a reasonable time for completion of discovery, are unheard

of." [Dkt. No. 20, ¶ 13]. Plaintiff has a point. Under the Texas Rules of Civil Procedure, the "proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception." *See Rodriguez v. U.S. Sec. Assocs.*, 162 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Additionally, "when special exceptions are sustained, the pleader must be given, *as a matter of right*, an opportunity to re-plead." *Id.* (emphasis added). "Only after special exceptions have been sustained and a party has been given an opportunity to amend its pleadings may a case be dismissed for failure to state a cause of action". *Id.*; *see also Bagg v. University of Texas Medical Branch*, 726 S.W.2d 582, 587 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Thus, Plaintiff is correct that the Texas pleading rules are more lenient in the sense that they entitle plaintiffs to at least a second opportunity to craft a well-pled petition. Nevertheless, that this procedural right somehow attaches to the petition upon removal is an argument categorically foreclosed by the well-established federal rule governing remand analysis: when determining whether to remand, courts consider the claims only as they existed at the time of removal, and not to post-removal amendments.[1] *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp. 2d 669, 670 (S.D. Tex. 2006). This principle makes sense in light of concerns for finality and expedient adjudication. Although, as a practical matter, Plaintiff may be correct that the federal standard

---

[1] Of course, such is not *all* that courts may consider. In some circumstances, courts may "pierce the pleadings" to consider, in a summary judgment-like fashion, evidence such as affidavits. *Smallwood*, 385 F.3d at 573. But this is only true in close cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* In other words, such "piercing" will never advantage a plaintiff; it cannot work to resurrect a facially deficient complaint, but only to deflate a superficially viable one. Since Plaintiff's pleadings are insufficient on their face, consideration of documents outside the pleadings is unnecessary.

manifests unfair results by "changing the rules while the ball is in the air,"[2] [Dkt. No. 20, ¶ 13], it is not the province of this Court to supplant the entrenched federal rule.

Second, Plaintiff provides no basis on which to conclude that a minimally feasible petition in state court may be less detailed and coherent than its federal counterpart. Yet he implicitly argues such in asserting that "[P]laintiff's [Complaint] was drafted to meet the notice pleading requirement enforced in Texas state courts . . . ."[3] [Dkt. No. 20, ¶ 13]. Therefore, all that remains of Plaintiff's Motion to Reconsider is the argument that the Court erred in concluding that his Complaint fails to state a claim against Defendants Sanchez and Rivera under the Federal Rules.

### B. Plaintiff's Pleadings Reexamined

One primary basis for the Court's finding of fraudulent joinder was its determination that Plaintiff, although naming Defendants Sanchez and Rivera in the style of his Complaint, failed to lodge any meaningful factual allegations against them specifically. [Dkt. No. 14 at 3-4]. In focusing on this feature of the Complaint, the Court invoked the Fifth Circuit's decision in *Cavallini*, where the given complaint against the individual defendants was deemed insufficient because the allegations referred only to "the defendants" broadly, or referred only to the insurance company defendants as opposed to the individual agents. [Dkt. No. 14 at 3 (citing *Cavallini*, 44 F.3d at 260)]. Plaintiff attempts to contrast the complaint at issue in *Cavallini* with his own, arguing that numerous allegations in his Complaint "can be fairly read to have application to Sanchez's and Rivera's marketing conduct . . . ." [Dkt. No. 20, ¶ 14].

---

[2] That is, that Plaintiff is denied what otherwise would be a "second chance" because of Defendants' choice to shift the forum, thereby making the Federal Rule operative rather suddenly.

[3] The only authority plausibly supporting this proposition is an opinion from the U.S. Southern District of Texas, Houston Division, in which that Court interpreted the Texas "fair notice pleading requirement" to permit pleadings premised upon factual allegations of a much more general nature than would be acceptable in federal court. *Kiw, Inc. v. Zurich American Ins. Co.*, 2005 U.S. Dist. Lexis 38736 (S.D. Tex. 2005). However, as is explained in greater detail below, Plaintiff's Complaint fails to satisfy even the lenient standard applied in *Kiw*.

For example, Plaintiff points to ¶ 14 in his Complaint, which alleges that "[a]t the time defendants sold the insurance policy to [P]laintiff they knew, or should have known, that they did not intend to honor the policy and pay the insurance benefits contracted for in a timely manner." [Dkt. No. 1, ¶ 14]. This paragraph is key to Plaintiff's fraud claim, but cannot fairly be read to indict Defendants Sanchez and Rivera. Merely because Plaintiff prophylactically employs the term "defendants" in each paragraph does not automatically render the Complaint one that states a genuine claim against *each* named defendant. Surely, Plaintiff cannot be arguing that the insurance agents failed to "honor the policy." There was nothing for the agents, as individuals, to "honor." Rather, the Policy was for the *insurance company* to honor. Additionally, Time was to "pay the insurance benefits" to Plaintiff under the Policy, not its agents. Paragraph 14 rather alleges that Time has not honored its agreement with Plaintiff, and that it never intended to. Such is insufficient to count as a claim against Time's insurance agents. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) ("[Plaintiff's] pleadings refer to conduct by 'the [d]efendants' that can in no way be attributed to [the insurance agent.]"). This is especially true in light of how Plaintiff, in rare moments of specificity, describes the agents' role in this matter: as merely *marketers* of the Policy. [*See*, *e.g.*, Dkt. No. 1, ¶¶ 11, 15; Dkt. No. 20, ¶ 15].

The only allegations that can reasonably be read as applicable to Defendants Sanchez and Rivera are those averring that the two, in marketing the Policy, provided Plaintiff with the general assurance that the policy would be honored. [Dkt. No. 1, ¶ 15]. These statements, according to Plaintiff, were false representations that induced Plaintiff into purchasing the Policy. [Dkt. No. 20, ¶ 14]. In *Griggs v. State Farm Lloyds*, the Fifth Circuit faced a fact pattern strikingly similar to that presented here. 181 F.3d at 694. The plaintiff's claims under the Texas Deceptive Trade Practices Act (DTPA) and the Texas Insurance Code (TIC) relied on the

7

insurance agent's assurances that claims would be "handled professionally" and the like. *Id.* at 701. The *Griggs* court concluded that such amounted to no more than "non-actionable sales puffery"[4] and were far from "misrepresentations of material fact," the showing of which is required for recovery under the DTPA and the TIC.[5] *Id.* Thus, Plaintiff's claims under the DTPA, TIC, as well as his common-law fraud claim, are deficient in that they rely on statements that as a matter of law cannot be deemed "material misrepresentations."[6] *See Great Plains Trust C. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002) (reiterating that a plaintiff must allege a material misrepresentation in order to recover under common-law fraud); *see also* FED. R. CIV. P. 9(b) (requiring plaintiffs to plead fraud with particularity).

Regarding Plaintiff's DTPA and TIC claims, another established prerequisite to recovery—or perhaps a restatement of the materiality requirement—is that the alleged misrepresentations by the insurance agent(s) pertain to "*specific* policy terms." *Griggs*, 181 F.3d at 701 (emphasis added); *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998). Plaintiff argues that his Complaint indeed alleges misrepresentations of a specific policy term: Defendants prompted Plaintiff to purchase the Policy at issue by telling him he no longer

---

[4] This phrase is not a quote from Defendants' filings, but rather from on-point caselaw, which was, in turn, quoted at length by Defendants. Plaintiff's repeated implications that the Court unequivocally adopted Defendants' arguments, at times even *ver batum*, suggests only Plaintiff's failure to recognize various key principles and phraseology in the Court's previous opinion as products of controlling precedent.

[5] For examples of misrepresentations cognizable in this context, *see Garrison*, 966 S.W.2d 482 (misrepresentation of specific premium due); *State Farm Fire & Casualty Co. v. Gros*, 818 S.W.2d 908 (Tex. App.—Austin 1991, no writ) (misrepresentation that damage to home caused by mudslides was covered by policy).

[6] Although Texas caselaw is not clear as to whether a claim for negligent misrepresentation, as opposed to fraud, requires the respective misrepresentation to be "material," what is clear is that "the sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct." *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *see also Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex. App—El Paso 1992, writ denied); *MPG Petroleum, Inc. v. Crosstex CCNG Mktg.*, 2006 Tex. App. Lexis 8895 (Tex. App.—Corpus Christi 2006, no pet. h.). That an insurance policy "will be honored" is obviously a representation of future conduct. Thus, Plaintiff's Complaint at the time of removal did not state a claim of negligent misrepresentation against Sanchez and Rivera.

qualified for "group" coverage, due to his loss of an employee. [Dkt. No. 20, ¶ 11]. Plaintiff was required to purchase a new individual policy for himself in order to enjoy continued coverage. [Dkt. No. 20, ¶ 11]. But in his Compliant, Plaintiff failed to connect these representations to his alleged injury; indeed, he failed to even suggest that Sanchez and Rivera were untruthful in articulating Time's criteria for group coverage qualification. [Dkt. No. 20, ¶¶ 18, 19]. Nor did he aver such in his subsequent Motion for Remand, or in his remand Reply brief.

Thus, Plaintiff's Compliant decidedly did not contain allegations of specific policy misrepresentations on the part of Sanchez and Rivera. Interestingly, even the scant caselaw that supports Plaintiff's argument that his state pleadings should be held to a forgiving standard calls for a rejection of his Complaint. As mentioned above, the Southern District of Texas, in *Kiw v. Zurich American Ins. Co.*, applied a relatively forgiving pleading standard purportedly in observance of state practice. *Kiw* also dealt with the denial of insurance claims and accompanying fraud allegations against the respective insurance agent. 2005 U.S. Dist. Lexis at 2. Central to the court's ruling that the pleadings were sufficient under *Texas* pleading standards were the plaintiff's allegations of *specific* policy misrepresentations, namely, that the policy covered home damage caused by mudslides. *Id.* at 15. Plaintiff's claims against Sanchez and Rivera, therefore, would not fare better under the "liberal pleading standard" applied in *Kiw*. *See id.*

Only now, in his Motion for Reconsideration, does Plaintiff allege that Sanchez and Rivera misrepresented Time's group policy criteria. [Dkt. No. 20, ¶¶ 18-19]. However, the current analysis focuses on whether Plaintiff's *Complaint* stated a cause of action, not on later filings that attempt to retroactively change the meaning of the Complaint—after all, Plaintiff's Motion for

9

Reconsideration is not itself an amended complaint, but rather is premised on the notion that the Court erred in interpreting the original Complaint.

In short, each successive evaluation off Plaintiff's filings further reinforces the conclusion that he joined Sanchez and Rivera as defendants is state court for no reason but to preempt this Court's diversity jurisdiction. Recovery against Sanchez and Rivera, based on Plaintiff's Complaint, is not plausible; and it is not enough that recovery merely be "conceivable." As the Fifth Circuit has stated, a "hypothetical possibility that such an action could exist is insufficient . . . To the contrary, whether the plaintiff has stated a valid state law cause of action depends upon, and is tied to, the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs*, 181 F.3d at 701; *see also Smallwood*, 385 F.3d at 573 ("A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)). Because the "fit" between Plaintiff's allegations and the theories of recovery he invokes is too loose to satisfy *any* pleading standard, especially the controlling federal standard, the Court affirms its finding of fraudulent joinder.

### C.  Curing the Pleading Defects to Prevent Dismissal

Having failed to find "manifest error in law or fact" in its previous finding of fraudulent joinder, the Court must now decide whether it follows that Defendants are entitled to dismissal.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim on which relief can be granted." Dismissal is warranted when it is clear that a plaintiff can "prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)). In evaluating the sufficiency of the pleadings, a court treats all well-pleaded

facts as true, "viewing them in the light most favorable to the plaintiff." *Id*. (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)). A court should not dismiss a claim unless the plaintiff would not be entitled to relief under "any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id*. (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)).

Plaintiff has not moved for leave to amend his claims against Defendants Sanchez and Rivera in order to avoid dismissal. He merely makes the declaration at the end of his Motion for Reconsideration that "the Court should grant leave to file an amended complaint . . . ." [Dkt. No. 20, ¶ 25]. Additionally, Plaintiff does not provide a proposed amended complaint, or even additional allegations that would appreciably flesh out his claims. Rather, he provides additional tangential factual averments that hardly serve to cure the deficiencies in his Complaint, and tops it all off with the assertion that "[d]iscovery may reveal additional misrepresentations of policy provisions." [Dkt. No. 20 pp. 8-10].

The Fifth Circuit has established that where a party moves to amend his complaint, but fails to include a proposed amended complaint, or at least explain how amendment would cure the pleadings, district courts do not abuse their discretion in denying leave. *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990). As the Tenth Circuit put it,

> . . . a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it. Our conclusion does not detract from the district court's wide discretion to recognize a motion for leave to amend in the interest of a just, fair or early resolution of litigation. [The] requirement of notice merely assures that "we do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists."

*Calderon v. Kansas Dep't of Soc. & Rehabilitation Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999) (internal citations omitted); *see also Brandt v. Davis* 191 F.3d 887, 893 (8th Cir. 1999)

11

(upholding denial of leave to amend where motion to amend failed "to explain how [the plaintiff] would amend the complaint to save his claim."); *Suckow Borax Mines Consol., Inc. v. Borax Consol., Ltd.*, 185 F.2d 196 (9th Cir. 1950); *Doe v. Howe Military Sch.*, 227 F.3d 981 (7th Cir. 2000); *Lake v. Arnold*, 232 F.3d 360 (3d Cir. 2000).

This position makes sense in light of the well-settled practice of denying motions to amend when the proposed amendments would be "futile." *See*, *e.g.*, *Emory v. Texas State Bd. of Medical Examiners*, 748 F.2d 1023 (5th Cir. 1984) ("If the amendment would be futile, it may be disallowed."); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980). That is, if courts allow parties to amend their complaints even when they fail to specifically show how such amendments would cure the respective defects, the futility limitation would be meaningless, as courts would have no way to foretell whether such amendments would be futile in the first place. Obviously, such latitude would serve only to discourage parties from revealing their proposed pleading changes.

Accordingly, because Plaintiff has failed to properly seek leave to amend his Complaint; failed include with his Motion for Reconsideration a proposed amended compliant; failed to appreciably set out in his Motion for Reconsideration the allegations that would save his claims; and because the Court currently has no reason to believe that Plaintiff is able to amend his Complaint to cure its deficiencies; the Court will not allow Plaintiff to amend.

### IV.   CONCLUSION

"Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder". *Smallwood*, 385 F.3d at 573. As a practical matter, the negative corollary of this statement will often hold true: if a plaintiff's claims against in-state defendants cannot survive a Rule 12(b)(6)

analysis, the finding of improper joinder follows. Such is the case here. The Court finds no manifest error in its previous denial of remand because Plaintiff has failed to state a claim against Defendants Sanchez and Rivera. Further, justice does not compel granting Plaintiff leave to amend his Complaint. Accordingly, Plaintiff's Motion for Rehearing [Reconsideration] is **DENIED**. Defendants Sanchez and Rivera's Motion to Dismiss is **GRANTED** in its entirety.

IT IS SO ORDERED.

DONE this 4th day of January 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**